**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. _____ |
| MAPLE MANAGER, LLC; JERALD LASKY; DYLAN BATES; POPE HOLDINGS, LLC; RYAN ANETSBERGER; PHILLIP-HAMILTON INVESTMENTS, LLC; CHRISTOPHER COWAN; MAYER LIVING TRUST; JOHN ORSINI; WILLIAM GLICKAUF; CHICAGO KNIGHT LIFE, LLC; MICHAEL YOUNG; CHERYL FARAGO; WILLIAM FARAGO, JR.; BRENT MACK; and JASON HAFNER, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers"), seeks declaratory judgment against defendants Maple Manager, LLC ("Maple Manager"); Jerald Lasky; Dylan Bates; Pope Holdings, LLC; Ryan Anetsberger; Phillip-Hamilton Investments, LLC; Christopher Cowan; Mayer Living Trust; John Orsini; William Glickauf; Chicago Knight Life, LLC; Michael Young; Cheryl Farago; William Farago, Jr., Brent Mack and Jason Hafner,[1] pursuant to 28 U.S.C. §§ 2201 and 2202. In support of its Complaint for Declaratory Judgment, Travelers states as follows:

---

[1] Dylan Bates, Pope Holdings, LLC, Ryan Anetsberger, Phillip-Hamilton Investments, LLC, Christopher Cowan, Mayer Living Trust, John Orsini, William Glickauf, Chicago Knight Life, LLC, Michael Young, Cheryl Farago, William Farago, Jr, Brent Mack and Jason Hafner are collectively referred to in this Complaint as "Claimants" except where individually identified.

## PRELIMINARY STATEMENT

1.      This is a lawsuit for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to determine the rights and obligations of the parties under a Travelers Wrap+ Policy (the "Policy"). This coverage dispute arises out of two underlying lawsuits filed in the Circuit Court of Cook County, Illinois by the Claimants against Maple Manager, Jerald Lasky and others captioned *Dylan Bates, et al. v. LP Manager, LLC, et al.,* Case No. 22 CH 6190, (the "Investor Suit") and *Dylan Bates v. Maple Manager, LLC*, Case No. 23 CH 0407 (the "Liquidating Trustee Suit") (collectively, the "Underlying Lawsuits"). In the Investor Suit, certain of the Claimants, in their capacity as investors, assert claims against Maple Manager, Jerald Lasky and others in connection with the management of restaurants located in Chicago, Illinois and Scottsdale, Arizona. In the Liquidating Trustee Suit, certain of the Claimants seek appointment of a liquidating trustee, pursuant to Delaware law, for the winding up of a corporate entity allegedly owned by Claimants. In this action, Travelers seeks a declaration that it does not have any coverage obligations to Maple Manager and Jerald Lasky with respect to the Underlying Lawsuits.

## THE PARTIES

2.      Travelers is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Travelers, therefore, is a citizen of Connecticut.

3.      Maple Manager, LLC is a Delaware limited liability company with its principal place of business located in Cook County, Illinois. After conducting a reasonable investigation of publicly available information disclosed by the Division of Corporations for Delaware, Travelers has determined that the identity and citizenship of Maple Manager, LLC's members is not publicly available. However, based upon limited publicly available information, as well as the allegations in the Underlying Lawsuits, Travelers is informed and believes that Maple Manager, LLC's

members are domiciled in, and citizens of, Illinois, and not Connecticut. Therefore, Travelers reasonably believes that Maple Manager, LLC is a citizen of Illinois, and not a citizen of Connecticut.

4. Jerald Lasky is an individual domiciled in Illinois, and is, therefore, a citizen of Illinois.

5. Dylan Bates is an individual domiciled in Illinois, and is, therefore, a citizen of Illinois.

6. Pope Holdings, LLC is an Illinois limited liability company with its principal place of business located in Cook County, Illinois. After conducting a reasonable investigation of publicly available information disclosed by the Illinois Secretary of State, Travelers has determined that the identity and citizenship of Pope Holdings, LLC's members is not publicly available. However, based upon limited publicly available information, as well as the allegations in the Investor Suit, Travelers is informed and believes that Pope Holdings, LLC's members are domiciled in, and citizens of, Illinois, and not Connecticut. Therefore, Travelers reasonably believes that Pope Holdings, LLC is a citizen of Illinois and is not a citizen of Connecticut.

7. Ryan Anetsberger is an individual domiciled in Illinois, and is, therefore, a citizen of Illinois.

8. Phillip-Hamilton Investments, LLC is an Illinois limited liability company with its principal place of business located in Cook County, Illinois. After conducting a reasonable investigation of publicly available information disclosed by the Illinois Secretary of State, Travelers has determined that the identity and citizenship of Phillip-Hamilton Investments, LLC's members is not publicly available. However, based upon limited publicly available information, as well as the allegations in the Investor Suit, Travelers is informed and believes that Phillip-

Hamilton Investments, LLC's members are domiciled in, and citizens of, Illinois, and not Connecticut. Therefore, Travelers reasonably believes that Phillip-Hamilton Investments, LLC is a citizen of Illinois, and not a citizen of Connecticut.

9.      Christopher Cowan is an individual domiciled in Illinois, and is, therefore, a citizen of Illinois.

10.     Mayer Living Trust is an Arizona trust. After conducting a reasonable investigation of publicly available information, including the public records of the Maricopa County (Arizona) Recorder, Travelers has determined that the identity and citizenship of all current trustees of the Mayer Living Trust is not publicly available. However, based upon limited publicly available information, as well as the allegations in the Investor Suit, Travelers is informed and believes that the trustees of the Mayer Living Trust are domiciled in, and citizens of, Arizona and not Connecticut. Therefore, Travelers reasonably believes that the Mayer Living Trust is a citizen of Arizona and not a citizen of Connecticut.

11.     John Orsini is an individual domiciled in Illinois, and is, therefore, a citizen of Illinois.

12.     William Glickauf is an individual domiciled in Arizona, and is, therefore, a citizen of Arizona.

13.     Chicago Knight Life, LLC is an Illinois limited liability company with its principal place of business located in Cook County, Illinois. After conducting a reasonable investigation of publicly available information disclosed by the Illinois Secretary of State, Travelers has determined that the identity and citizenship of Chicago Knight Life, LLC's members is not publicly available. However, based upon limited publicly available information, as well as the allegations in the Underlying Lawsuit, Travelers is informed and believes that Chicago Knight

Life, LLC's members are domiciled in, and citizens of, Illinois, and not Connecticut. Therefore, Travelers reasonably believes that Chicago Knight Life, LLC is a citizen of Illinois and is not a citizen of Connecticut.

14. Michael Young is an individual domiciled in Arizona, and is, therefore, a citizen of Arizona.

15. Cheryl Farago is an individual domiciled in Arizona, and is, therefore, a citizen of Arizona.

16. William Farago Jr. is an individual domiciled in Illinois, and is, therefore, a citizen of Illinois.

17. Brent Mack is an individual domiciled in Illinois and is, therefore, a citizen of Illinois.

18. Jason Hafner is an individual domiciled in Illinois and is, therefore, a citizen of Illinois.

19. The Claimants are named as defendants in this coverage action because the Claimants have asserted claims against Maple Manager and Jerald Lasky in the Underlying Lawsuits, for which Maple Manager and Jerald Lasky have requested insurance coverage under the Policy, and any rights the Claimants may have with respect to insurance coverage for their claims against Maple Manager and Jerald Lasky may be affected by the outcome of this action. Travelers seeks no separate relief or judgment against the Claimants, but only seeks to bind them to the outcome of this coverage dispute.

## JURISDICTION AND VENUE

20.     Pursuant to 28 U.S.C. § 1332, federal subject matter jurisdiction exists in this action because, on information and belief, the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. In particular, the Policy was issued to the named insured, Maple Hospitality Group, LLC, in this judicial district and the Underlying Lawsuits for which coverage is sought are pending in this judicial district.

22.     Alternatively, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(3) because defendants Jerald Lasky, Maple Manager, Dylan Bates, Pope Holdings, LLC, Phillip-Hamilton Investments, LLC, Christopher Cowan, John Orsini, Chicago Knight Life, LLC, William Farago Jr, Brent Mack and Jason Hafner each have their principal place of business or reside in this judicial district and are subject to the court's personal jurisdiction with respect to this action.

## THE INVESTOR SUIT

### I.     *The Original Complaint filed on June 27, 2022.[2]*

23.     On June 27, 2022, the Claimants filed the Investor Suit, asserting direct and derivative causes of action premised upon alleged breaches of fiduciary and contractual duties in the management of two steakhouse restaurants called "Maple & Ash," one located in Chicago, Illinois and the other located in Scottsdale, Arizona.  A copy of the Complaint for Injunction,

---

[2] The Original Complaint was not filed under seal and is publicly available through the Cook County Circuit Court.

Derivative Damages, Appointment of a Receiver, and Other Relief ("Original Complaint") filed in the Investor Suit on June 27, 2022 is attached to this Complaint as **Exhibit A**.

24.     The Original Complaint joined the following as defendants:

- LP Manager, LLC;

- What If Syndicate, LLC;

- James Lasky;

- David Pisor;

- Maple & Ash Management, LLC;

- Maple & Ash Scottsdale, LLC.

25.     In the Original Complaint, Claimants alleged that, beginning in or about 2015, James Lasky (Jerald Lasky's brother) and David Pisor began soliciting investors for a new steakhouse to be called "Maple & Ash."

26.     Claimants further alleged that in or about 2015, Claimants, along with other investors, contributed investments totaling $3 million to open the restaurant in Chicago.

27.      Claimants also asserted in the Original Complaint that in or about 2018, Claimants, along with other investors, also contributed investments totaling $3 million to open the restaurant in Scottsdale.

28.     In the Original Complaint, Claimants alleged that at the time of opening, the restaurant in Chicago was managed by LP Manager, LLC, which was jointly owned and controlled by James Lasky and David Pisor.

29.     Claimants further alleged that at the time of opening, the restaurant in Scottsdale was managed by What If Syndicate, LLC, which was also jointly owned and controlled by James Lasky and David Pisor.

7

30.     Claimants asserted in the Original Complaint that, because James Lasky and David Pisor jointly owned and controlled the entities managing the restaurants, the success of the restaurants was dependent upon the ability of James Lasky and David Pisor to effectively work together.

31.     Claimants further alleged that in March 2022, several years after the restaurants had opened, a dispute arose between James Lasky and David Pisor which resulted in David Pisor filing a lawsuit against James Lasky in Cook County[3] that included claims and counterclaims between them alleging misappropriation of company resources, improper conduct with employees, and various other allegations relating to the operations of the restaurants.

32.     Claimants alleged in the Original Complaint that after they became aware of the dispute between management and the allegations potentially impacting the on-going operations of the restaurants, legal counsel for Claimants sent a letter to legal counsel for James Lasky demanding books and records for the restaurants.

33.     Claimants further asserted that despite the demands and exchange of further correspondence between legal counsel, only a "handful" of documents were produced in the weeks that followed in April 2022.

34.     In the Original Complaint, Claimants also alleged that in addition to the Lasky-Pisor dispute that threatened the operations of the restaurants, What If Syndicate, LLC and LP Manager, LLC unilaterally increased and paid management fees in excess of the amounts that had been set forth in the offering materials provided to investors in 2015 (Chicago) and 2018 (Scottsdale).

_____

[3] *David Pisor, et al v. James Lasky*, case no. 22 CH 02852, filed on March 29, 2022.

35.     The Original Complaint included the following seven (7) counts arising out of the failure to provide books and records, the excessive management payments, and the misappropriation of profits:

Count I:        Individual Plaintiffs' Claim for Access to Books and Records

Count II:       Derivative Action for Breach of Fiduciary Duties: LP Manager LLC

Count III:      Derivative Action for Breach of Fiduciary Duties: What If Syndicate LLC

Count IV:       Derivative Action for Appointment of a Receiver and Accounting: MA Chicago

Count V:        Derivative Action for Appointment of a Receiver and Accounting: MA Scottsdale

Count VI:       MA Chicago Derivative Action for Unjust Enrichment: Lasky & Pisor

Count VII:      MA Scottsdale Derivative Action for Unjust Enrichment: Lasky & Pisor

## II.     *The First Amended Complaint filed under seal on November 29, 2022.*[4]

36.     On November 29, 2022, Claimants filed their First Amended Complaint ("First Amended Complaint") in the Investor Lawsuit under seal.

37.     Upon information and belief, including docket information that is publicly available through the Cook County Circuit Court, the First Amended Complaint joined the following as additional defendants:

- LP Ventures, LLC;

---

[4] Travelers is unable to file a copy of the First Amended Complaint at this time due to the filing of that pleading under seal in the Investor Suit and a protective order that is believed to have been entered in the Investor Suit on September 13, 2022. Subject to assurance of compliance with any applicable protective order, Travelers may seek leave from this Court to file an amended complaint in this proceeding with a copy of the First Amended Complaint attached, or may submit a copy of the First Amended Complaint to this court by way of another acceptable method.

- Foregiveness, Inc.;

- Foregiveness AZ, LLC.

38.     Upon information and belief, Claimants continued to allege in the First Amended Complaint the same claims alleged in the Original Complaint arising out of the alleged failure to provide books and records, the allegedly excessive management payments, and the alleged misappropriation of profits from the restaurants.

**III.     *The Second Amended Complaint filed under seal on April 14, 2023.*[5]**

39.     On March 28, 2023, Claimants filed an Emergency Motion for Leave to File a Second Amended Complaint under seal**.** Upon information and belief, including docket information that is publicly available through the Cook County Circuit Court, it appears that the Court in the Investor Suit granted Claimants leave and the Second Amended Complaint ("Second Amended Complaint") was filed under seal on April 14, 2023.

40.     Upon information and belief, including docket information that is publicly available through the Cook County Circuit Court, the Second Amended Complaint joined the following as additional defendants:

- Jerald Lasky;

- Maple Manager, LLC.

41.     Upon information and belief, Claimants continue to allege in the Second Amended Complaint the same claims alleged in the Original Complaint arising out of the failure to provide

---

[5] Travelers is unable to file a copy of the Second Amended Complaint at this time due to the filing under seal and a protective order that is believed to have been entered in the Underlying Lawsuit on or about September 13, 2022. Subject to assurance of compliance with any applicable protective order, Travelers may seek leave from this Court to file an amended complaint in this proceeding with a copy of the Second Amended Complaint attached, or may submit a copy of the Second Amended Complaint to this court through another acceptable method.

books and records, the excessive management payments, and the misappropriation of profits from the restaurants.

## THE LIQUIDATING TRUSTEE SUIT

42.     On April 24, 2023, certain of the Claimants filed the Liquidating Trust Suit. A true and correct copy of the Complaint filed in the Liquidating Trust Suit is attached to this Complaint as **Exhibit B**.

43.     Claimants allege in the Liquidating Trust Suit, among other things, that Maple & Ash Management, LLC, is a successful restaurant currently managed by Maple Manager, LLC and that  Maple Manager, LLC has taken steps to dissolve the restaurant so that (a) Maple Manager, LLC does not need to share the restaurant's success with its investors, and (b) Maple Manager, LLC does not need to repay the millions of dollars that it and its affiliates allegedly wrongfully took.

44.     Claimants in the Liquidating Trust Suit further allege that Maple Manager, LLC cannot and should not be trusted to handle the winding up of the restaurant, as its assets are principally comprised of accounts receivable, namely, the right to be repaid loans improperly made to various businesses controlled by the managers of Maple Manager, LLC, and derivative claims against the restaurant's prior manager, LP Manager, LLC and its affiliate What If Syndicate, LLC.

45.     Claimants also allege that the bulk of the restaurant's debtors are also controlled by one or both of Maple Managers, LLC's managers, which poses a danger to the value of Claimants' interests.

46.     In the Liquidating Trust Suit, Claimants also reassert many of the factual allegations set forth in the Investor Suit.

47.     The Complaint for Liquidating Trustee sets forth one count for Application for Liquidating Trustee Pursuant to 6 Del. C. s. 18-803(a).

## THE POLICY, TENDER, AND DENIAL OF COVERAGE

48.     In December 2022, while the Investor Lawsuit was pending and after the filing of the First Amended Complaint but prior to the filing of the Second Amended Complaint as described above, Travelers received an application for the Policy.

49.     Travelers issued the Policy, with Maple Hospitality Group, LLC as the first named insured under policy no. 107766700, with a policy period of January 6, 2023 to January 6, 2024. A true and correct copy of the Policy is attached to, and incorporated by reference in, this Complaint as **Exhibit C**.

50.     By endorsement and at the request of Maple Hospitality Group, LLC, through its insurance agent, the following scheduled entities were added to the Policy as named insureds, among others:

- Foregiveness AZ, LLC;

- Foregiveness, Inc.;

51.     The Policy contains several separate insuring agreements, including a Private Company Directors and Officers Liability Insuring Agreement.

52.     The Private Company Directors and Officers Liability Insuring Agreement is subject to a Limit of Liability of $1,000,000 for each Policy Year and a $25,000 Retention for each covered Claim under Insuring Agreements B and C.

53.     The Private Company Directors and Officers Liability Insuring Agreement is subject to a Prior and Pending Proceeding Date of January 6, 2023.

54.     The Policy's Private Company Directors and Officers Liability Insuring Agreement

states, in relevant part, as follows:[6]

> **THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.**
> **PLEASE READ THE POLICY CAREFULLY.**

**I.     INSURING AGREEMENTS**

The Company will pay on behalf of:

**A.**    the **Insured Persons, Loss** for **Wrongful Acts**, except for **Loss** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;

**B.**    the **Insured Organization, Loss** for **Wrongful Acts** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and

**C.**     the **Insured Organization, Loss** for **Wrongful Acts**,

resulting from any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

The Company will also pay on behalf of the **Insured Organization, Investigation Expense** resulting from any **Security Holder Derivative Demand** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, against an **Insured Organization** for **Wrongful Acts**. The Company's maximum limit of liability for all **Investigation Expense** will be the Investigation Expense Limit of Liability set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

55.     The Policy contains the following definitions, among others, applicable to the

Private Company Directors and Officers Liability Insuring Agreement:

**A.**    *Claim* means:

    1.    a written demand, other than a **Security Holder Derivative Demand**, for monetary damages or non-monetary relief;

    2.    a civil proceeding commenced by service of a complaint or similar pleading;

    …

    against an **Insured** for a **Wrongful Act**, provided that **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

    A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**. However, if any **Insured Person** who is not an **Executive Officer** first receives written notice of a **Claim** during the **Policy Period**, but no **Executive Officer** receives written notice of such **Claim** until after the **Policy Period** has expired, then such **Claim** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim**.

                                            ***

**B.**    *Executive Officer* means the chairperson, chief executive officer, president, chief financial officer, in-house general counsel, or **LLC Manager** of the **Insured Organization** or a functional equivalent thereof.

                                            ***

---

[6] Terms appearing in bold font are defined in the Policy.

13

**C.**    *Insured* means the **Insured Persons** and the **Insured Organization**.

\*\*\*

**D.**    *Insured Organization* means the **Named Insured,** any **Subsidiary**, and any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law.

\*\*\*

**E.**    *Insured Person* means any natural person who was, is or becomes a duly elected or appointed member of the board of directors, officer, or a functional equivalent to a member of the board of directors or officer of the **Insured Organization** in the event the **Insured Organization** is incorporated or domiciled outside the United States, member of the board of managers, **Executive Officer**, employee, or member of a management committee or an advisory committee of the **Insured Organization**.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

\*\*\*

**G.**    *Loss* means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements, judgments, back and front pay, compensatory damages, punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages, prejudgment and postjudgment interest, and legal fees and expenses awarded pursuant to a court order or judgment.  **Loss** does not include:
1.    civil or criminal fines, sanctions, liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act, payroll or other taxes, or damages, penalties or types of relief deemed uninsurable under applicable law; or
2.    any amount allocated to non-covered loss pursuant to Section III. CONDITIONS. P. ALLOCATION of the Liability Coverage Terms and Conditions.

\*\*\*

**M.**    *Wrongful Act* means:
1.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her capacity as such;
2.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her **Outside Position**;
3.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the **Insured Organization**; or
4.    any matter asserted against an **Insured Person** solely by reason of his or her status as such.

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.

56.    Additionally, the Liability Coverage Terms and Conditions of the Policy contain

the following definitions, among others:

**Q.**    *LLC Manager* means any natural person who was, is or becomes a manager, member of the board of managers, or a functionally equivalent executive of an **Insured Organization** that is a limited liability company.

14

*** 

X. **Related Wrongful Act** means all **Wrongful Acts** that have as a common nexus, or are causally connected by reason of, any fact, circumstance, situation, event or decision.

57.     The Policy includes the following Exclusion Applicable to All Loss under the

Private Company Directors and Officers Liability Insuring Agreement:

4.     The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any fact, circumstance, situation, event, or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

58.     On March 28, 2023, Maple Manager and Jerald Lasky tendered the Investor Suit to

Travelers and requested coverage under the terms of the Policy.

59.     On May 1, 2023, Maple Manager tendered the Liquidating Trust Suit to Travelers

and requested defense and coverage under the terms of the Policy.

60.     Travelers has denied any obligation to provide a defense or pay for Loss (including

Defense Expenses) for the Underlying Lawsuits.

## <u>COUNT I</u>
## NO DUTY TO DEFEND OR INDEMNIFY – PRIOR AND PENDING LITIGATION EXCLUSION – MAPLE MANAGER AND JERALD LASKY

61.     Travelers realleges and incorporates by reference paragraphs 1 through 60 above

as though fully set forth herein.

62.     As more fully set forth above, the Policy includes Exclusion A.4 that precludes

coverage, in relevant part, for "**Loss** for any **Claim** based upon or arising out of any fact,

circumstance, situation, event, or **Wrongful Act** underlying or alleged in any prior or pending

civil, criminal, administrative or regulatory proceeding … against any **Insured** as of or prior to

the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this

**Liability Coverage**."

15

63.    Item 5 of the Declarations of the Policy provides that the Prior and Pending Proceeding Date applicable to the Private Company Directors and Officers Liability Insuring Agreement is January 6, 2023.

64.    As described above, the Investor Suit has been pending since June 27, 2022.

65.    Foregiveness AZ, LLC and Foregiveness, Inc., both of which are Insureds under the Policy, were joined in the Investor Suit as defendants in the First Amended Complaint filed on or about November 29, 2022.

66.    Coverage for the Underlying Lawsuits under the Private Company Directors and Officers Liability Insuring Agreement is precluded by Exclusion A.4 because the Underlying Lawsuits are based upon and arise out of facts, circumstances, situations, events, or **Wrongful Acts** that were alleged in the Investor Suit against **Insureds** prior to the Prior and Pending Proceeding Date on January 6, 2023.

67.    An actual controversy exists between the parties with respect to Travelers' obligations in connection with the Underlying Lawsuit, requiring the Court's declaration of the parties' rights and obligations.

68.    Travelers has no adequate remedy at law.

69.    Travelers has reserved all of its rights under the Policy and applicable law. By seeking a declaratory judgment based on the foregoing provisions of the Policy, Travelers does not waive any potential coverage defenses pursuant to any of the Policy's terms, conditions, and exclusions.   Developments in connection with the Underlying Lawsuits or this declaratory judgment action, as well as modifications to the protective order in the Investor Suit that may provide for the use in this litigation of information or documents filed under seal in the Investor Suit, may render additional defenses to coverage ripe for judicial determination.

16

## **REQUEST FOR RELIEF**

Travelers Casualty and Surety Company of America respectfully requests that the Court adjudicate and declare the rights of the parties, and that the Court enter judgment in its favor as follows:

a. Declare that the Policy affords no coverage to Maple Manager LLC and Jerald Lasky for the Underlying Lawsuits because coverage is precluded by the Policy's Exclusion A.4;

b. Declare that Travelers Casualty and Surety Company of America has no obligation to defend or indemnify Maple Manager, LLC and Jerald Lasky in connection with the Underlying Lawsuits;

c. Declare that Travelers Casualty and Surety Company of America has no obligation under the Policy to pay for any **Loss** in connection with the Underlying Lawsuits; and

d. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

By: */s/ Christopher J. Bannon*
Christopher J. Bannon
Nicholas J. Daly
Aronberg Goldgehn Davis & Garmisa
225 w. Washington St., Suite 2800
Chicago, IL 60606
(312) 755-3175
(312) 222-6375
cbannon@agdglaw.com
ndaly@agdglaw.com

*Attorneys for Plaintiff Travelers Casualty and
Surety Company of America*